(852 P.2d 517)

No. 68,524

TURNER AND BOISSEAU, CHARTERED, *Appellant,* v. ROBERT D. LOWRANCE, individually, and ROBERT D. LOWRANCE d/b/a LOWRANCE INVESTMENT COMPANIES, LOWRANCE INVESTMENT COMPANY, INC., and LOBO ORDER BUYERS, INC., *Appellees.*

Opinion filed May 14, 1993.

*James Cline* and *Eldon L. Boisseau,* of Turner and Boisseau, Chartered, of Wichita, for appellant.

*Charles E. Owen, II,* and *Ward Loyd,* of Loyd & Owen, of Garden City, for appellees.

Before BRAZIL, P.J., ROYSE, J., and CARL B. ANDERSON, JR., District Judge, assigned.

BRAZIL, J.: This is an action for recovery of attorney fees brought by Turner and Boisseau, Chartered (Turner) against Robert D. Lowrance, individually, and Robert D. Lowrance, d/b/a Lowrance Investment Companies, Lowrance Investment Company, Inc., and Lobo Order Buyers, Inc. (Both parties have referred to these three business entities as Lobo in their briefs. We have done likewise in this opinion.) Turner alleges the district court erred in granting partial summary judgment and that the

statute of limitations involved in this case was tolled by K.S.A. 60-519 and Kansas case law. We agree and reverse and remand for further proceedings.

In September 1984, Turner prepared a written contract setting forth the fee agreement between Lobo Order Buyers, Inc., and Turner with regard to a lawsuit captioned *Lobo Order Buyers, Inc. v. Cactus Feeders, Inc.* The contract was signed by Lowrance and dated October 8, 1984. H. Lee Turner, president of Turner, stated in deposition that Lowrance agreed to modify the contingency fee contract in the litigation involving Lobo and Cactus Feeders. However, the district court found that, other than the written fee contract signed October 8, 1984, there was no writing in which Lobo agreed to pay Turner any attorney fees. The proceedings in the *Cactus Feeders* litigation were concluded in November 1984. No payment of attorney fees has been made by Lobo since April 1985. Turner later entered into a fee agreement with Lowrance for representation in an action involving The Exchange Bank of Schmidt & Koester.

In 1987, Lobo filed Chapter 11 bankruptcy. The bankruptcy schedules did not list any debt to Turner. Also in 1987, R. D. Lowrance personally filed Chapter 11 bankruptcy. In the Lowrance bankruptcy action, a disclosure statement and plan of reorganization was filed December 24, 1987, showing a claim had been filed by Turner for approximately $600,000. Lowrance personally reviewed the plan of reorganization and made no objection at that time to the fees claimed by Turner. The Chapter 11 bankruptcy proceedings were dismissed with prejudice August 4, 1988.

Turner filed an action in Barton County on February 14, 1991, seeking to recover attorney fees from Lowrance as an individual involving the Exchange Bank litigation and also from Lobo involving the *Cactus Feeders* litigation. Lobo moved for a partial summary judgment, alleging the statute of limitations barred Turner from proceeding against Lobo. Lowrance further alleged he did not owe Turner any attorney fees because he had employed the Dan Turner law firm to prosecute the Exchange Bank litigation.

The district court denied summary judgment on the second allegation, finding a question of fact existed as to whether Low-

rance had employed Turner to represent him in the Exchange Bank litigation. However, the court granted the motion for partial summary judgment, dismissing the cause of action against Lobo for breach of a written contract. The court held that the cause of action was dismissed because it was barred by the statute of limitations. The court further held that an action to recover for any personal liability Lowrance may have had as a result of an oral or written contract was also barred by the statute of limitations.

Turner alleges the district court incorrectly ruled that K.S.A. 60-519 did not toll the statute of limitations during the pendency of the bankruptcy proceedings.

The district court found that the proceedings in the *Cactus Feeders* litigation were concluded in November 1984 and that no payment of attorney fees had been made concerning that litigation after April 1985. The court applied K.S.A. 60-511, which states in part: "The following actions shall be brought within five (5) years: (1) An action upon any agreement, contract or promise in writing." The court then stated that K.S.A. 60-520 "provides the [s]tatute of [l]imitations begins to run from the date of the last payment." Therefore, the court concluded, "on the basis of un-controverted facts plaintiff must have commenced its cause of action prior to April of 1990 in order of avoid the [s]tatute of [l]imitation." The instant action was filed February 14, 1991.

Turner alleges 11 U.S.C. § 108(c) (1988) of the Bankruptcy Code, read in conjunction with K.S.A. 60-519, tolls the statute of limitations during the pendency of bankruptcy actions. 11 U.S.C. § 108(c) states:

"Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim."

K.S.A. 60-519 states: "Whenever the commencement of any action shall be stayed by an injunction of any court, the time during which such injunction shall be in force shall not be deemed any portion of the time limit for the commencement of such action."

"Section 108(c) permits the commencement or continuation of an action until the later of two periods. The first is the end of a time period fixed by applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement. Such time period expressly includes 'any suspension of such period occurring on or after the commencement of the case.' Such a suspension may result from either state or federal law." 2 Collier on Bankruptcy § 108.04, p. 108-14 (15th ed. 1993).

Collier further states:

"In some jurisdictions state law may dictate suspension of a statute of limitations when a bankruptcy or another court proceeding has stayed the initiation of such action. Such suspensions would presumably be included within the terms of 108(c), adding the entire duration of the automatic stay to the applicable time period." 2 Collier on Bankruptcy § 108.04, p. 108-14.

Turner argues the statute of limitations was tolled for 17 months. Therefore, it received an additional 17 months from April 1990 in which to file its cause of action, and the statute of limitations does not bar its claim. Lobo argues that K.S.A. 60-519 is not applicable because there was no court-ordered injunction in this case and further that Turner was not precluded from pursuing its claim, albeit in the bankruptcy proceedings.

K.S.A. 60-519 was adopted by the legislature in 1963 and became effective January 1, 1964. L. 1963, ch. 303, 60-519. Although the statute states that "the commencement of any action shall be stayed by an injunction of any court," Judge Gard, in his treatise, sets forth the Advisory Committee notes, which stated: "This section simply spells out the rule that has heretofore been judicially applied." 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-519 (1979).

The rule that was previously applied provided that if a party was prevented from exercising his legal remedy by the pendency of a legal proceeding, then the operation of the statute of limitations was tolled until the restraint to bringing suit was removed. 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-519.

The rule is alive and well as evidenced in *Keith v. Schiefen-Stockham Insurance Agency, Inc.,* 209 Kan. 537, 498 P.2d 265 (1972), decided after K.S.A. 60-519 was enacted.

" 'The rule in this jurisdiction is that if a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the running of the statute of limitations applicable to the remedy is postponed, or if it has commenced to run, is suspended or tolled, during the time the restraint incident to the proceedings continues.' " 209 Kan. at 544 (quoting *In re Estate of Brasfield,* 168 Kan. 376, Syl. ¶ 7, 214 P.2d 305 [1950]).

K.S.A. 60-519 was enacted some eight years before the *Keith* decision. The fact that the opinion does not refer to K.S.A. 60-519 can lead to the conclusion that (1) K.S.A. 60-519 was enacted neither as a codification of the general rule nor in derogation of the general rule or (2) the statute should be interpreted broadly as having codified the general rule. In any event, if the legislature had wanted to reject the entire body of case law it would have indicated its intention. See 5 Vernon's Kansas C. Civ. Proc. § 60-519 (1967).

Interpreting K.S.A. 60-519 broadly, the automatic stay in bankruptcy proceedings can be considered an injunction.

"A stay is a suspension of the case or some designated proceedings within it. It is a kind of injunction with which a court freezes its proceedings at a particular point. It can be used to stop the prosecution of the action altogether, or to hold up only some phase of it, such as an execution about to be levied on a judgment." Black's Law Dictionary 1413 (6th ed. 1990).

The court in *In re Morton,* 866 F.2d 561 (2d Cir. 1989), determined that, although the bankruptcy proceedings remained pending, the automatic stay did not relieve the judgment creditor of the requirement to extend the lien after 10 years. The court found that "a bankruptcy court has no power under § 362(a) to *enjoin* extension proceedings required by state law." (Emphasis added.) 866 F.2d at 565. It is noted that the bankruptcy court's power to enjoin is spoken of in the negative. However, *Morton* still indicates that the automatic stay is seen as an injunction.

*In re Stonegate Sec. Services Ltd.,* 56 Bankr. 1014 (N.D. Ill. 1986), makes the relationship between an injunction and the automatic stay clearer. In *Stonegate,* a creditor was found to have violated the automatic stay. The court stated:

"The function of the bankruptcy court in enforcing Title 11 is to facilitate effective reorganization when appropriate. Section 362 acts as an injunction against interference with the bankruptcy court's jurisdiction over petitioning debtors. Therefore, when a party violates § 362's automatic stay provision, he is harming not only the debtor, but the effectiveness of the bankruptcy court itself in fulfilling the role Congress designed for it. That is why the natural consequence of a § 362 violation is a contempt citation." 56 Bankr. at 1019.

Another bankruptcy court found the same connection between an injunction and the automatic stay. *In re Stephen W. Grosse, P.C.*, 84 Bankr. 377 (Bankr. E.D. Pa. 1988), also involved a creditor who had violated the automatic stay. The court held: "Thus, the automatic stay, 11 U.S.C. § 362(a), constitutes an injunction with the force of an order of this court, knowing violation of which gives rise to the remedy of civil contempt." 84 Bankr. at 383-84.

Based on a broad reading of K.S.A. 60-519 and the case law in Kansas, the automatic stay in the bankruptcy proceedings should be treated as an injunction for purposes of tolling the statute of limitations.

Reversed and remanded for further proceedings.