JOHN O'LANE, Appellant, *v.* MARLYN SPINNEY, Respondent.

No. 23753

May 19, 1994

874 P.2d 754

---

[Rehearing denied September 6, 1994]

*Edwards & Kolesar, Chtd.* and *Dan R. Waite,* Las Vegas, for Appellant.

*Andras F. Babero,* Las Vegas, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

The facts of this case are brief and uncontested. The respondent, Marlyn Spinney, obtained a default judgment against the

appellant, John O'Lane, for injuries caused by medical malpractice. The judgment was entered on May 31, 1984. More than four years later, on July 22, 1988, O'Lane filed for Chapter 7 bankruptcy. O'Lane's bankruptcy case was dismissed without discharge on January 30, 1989. O'Lane then refiled for bankruptcy on February 8, 1989. On June 21, 1990, the bankruptcy court again dismissed the proceeding denying O'Lane a discharge of his debts.

On August 29, 1990, approximately six years and ninety days after the entry of her default judgment, Spinney attempted to renew her judgment by filing a renewal affidavit pursuant to NRS 17.214. On March 8, 1991, the district court appointed a receiver to take control of O'Lane's assets and financial affairs. O'Lane thereafter moved to terminate the receivership on grounds that Spinney's judgment had lapsed because of her failure to timely renew her judgment as required by NRS 17.214. The district court disallowed O'Lane's motion and this appeal followed.

## DISCUSSION

NRS 11.190 gives judgment creditors six years within which to enforce their judgments.[1] If a judgment has not been satisfied during the initial six-year period, the judgment creditor may renew the judgment for six additional years pursuant to NRS 17.214.[2] Judgment renewal is simple: the judgment creditor simply files an affidavit with the clerk of the court where the judgment is entered within ninety days before the judgment expires. In the instant case, Spinney's judgment was entered on May 31, 1984. Therefore, a renewal affidavit must have been filed *after* March 2, 1990, and *before* June 1, 1990. Spinney filed her renewal affidavit on August 29, 1990.

Spinney advances three arguments in defense of her untimely renewal filing: (1) she was prevented from renewing her judgment by the automatic stay provision of the Bankruptcy Code; (2) the limitation period of NRS 11.190 was tolled by the automatic

---

[1] NRS 11.190 provides, in relevant part:

Actions other than those for the recovery of real property, unless further limited by specific statute, can only be commenced as follows:
    1. Within 6 years:
    (a) An action upon a judgment or decree of any court of the United States, or of any state or territory within the United States, or the renewal thereof.

[2] NRS 17.214 provides, in relevant part:

    1. A judgment creditor . . . may renew a judgment which has not been paid by filing an affidavit with the clerk of the court where the judgment is entered and docketed, within 90 days before the date the judgment expires by limitation. . . .

stay while O'Lane was under the jurisdiction of the bankruptcy court; and (3) equity demands that O'Lane be held accountable for his malpractice. We conclude that Spinney's first two arguments are without merit. We further conclude that we are powerless to grant Spinney's request for an equitable determination.

Spinney first argues that the automatic stay prevented her from filing a renewal affidavit. We are persuaded by existing federal law that Spinney is incorrect. The United States Court of Appeals for the Second Circuit has recently examined this exact issue in In re Morton, 866 F.2d 561 (1989), and concluded that the stay does not prohibit the ministerial act of renewing a judgment.

In *Morton* a creditor held a pre-petition judgment lien against the debtor which expired by limitation while the debtor was in bankruptcy. The judgment creditor made an unsuccessful attempt to extend its lien, then argued that regardless of whether its efforts to renew the lien were successful, the automatic stay removes "any requirement under state law to obtain an extension of its lien." *Id.* at 563. The *Morton* court, considering the purposes for the automatic stay, concluded:

> The automatic stay provision of the bankruptcy code operates only as a stay of "any act to *create, perfect,* or *enforce*" a lien against property of the estate. Significantly, the section does not explicitly prohibit acts to *extend, continue,* or *renew* otherwise valid statutory liens, nor is there any indication from the legislative history that congress intended such a result.
>
> Action by a lienholder under [state law] does not result in an enlargement of the lien, nor does it threaten property of the estate which would otherwise be available to general creditors. To the contrary, extension . . . simply allows the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it.

*Id.* at 564 (citations omitted); *see also* Barber v. Emporium Partnership, 800 P.2d 795, 797 (Utah 1990) (stating that state courts have similarly interpreted the automatic stay provisions).

We decline to decide what the bankruptcy court would have done if Spinney had either sought relief from the stay or went ahead and filed her renewal affidavit. As an ordinary rule, creditors who are usure if the stay applies to them should assume the stay *is* applicable and seek appropriate relief pursuant to 11 U.S.C. 362(f). 2 Collier on Bankruptcy ¶ 362.04[4] (Lawrence P. King ed., 15th ed. 1992). This court may not, with propriety,

revive Spinney's judgment based upon the dubious proposition that an action to renew a judgment violates the automatic stay provisions of the Bankruptcy Code.

Spinney also contends that NRS 11.190 was tolled by 11 U.S.C. § 108(c) during the time O'Lane was in bankruptcy. Assuming, but not deciding, that 108(c) operated to extend Spinney's judgment for thirty days beyond the stay's termination, we do not agree that the period of limitations applicable to the judgment would have been tolled for each of the 327 days O'Lane was in bankruptcy. In pertinent part, Section 108(c) provides:

> [I]f applicable nonbankruptcy law . . . fixes a period of commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
>> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>> (2) 30 days after notice of the termination or expiration of the stay . . . .

Subsection (2) clearly anticipates that nonbankruptcy limitation periods may expire while the debtor is in bankruptcy; therefore, Spinney's argument that limitation periods are *always* tolled for the duration of bankruptcy is incorrect. Moreover, other courts have looked at this issue and concluded that expired limitation periods are only extended for thirty days pursuant to 108(c).

Apropos to the point, the *Morton* court declared:

> [W]e today hold that the tolling provisions of § 108(c) apply to New York's ten-year period governing judgment liens on real property. . . .
>
> . . . .
>
> We note that this result is in full harmony with congress's purpose in enacting § 108(c). Recognizing that a petition in bankruptcy could sometimes give a debtor unfair advantage over a claimant by allowing the debtor to remain under the protection of the automatic stay until the limitation period governing the claimant's action had expired, congress acted to solidly preserve the rights of a party "stayed from commencing or continuing an action against the debtor because of the bankruptcy case." It did so by extending the period for "commencing or continuing a civil action" against the debtor to, at a minimum, 30 days after termination or expiration of the automatic stay.

*Morton,* 866 F.2d at 566-67 (citations omitted); *see also* In re Hunters Run Ltd. Partnership, 875 F.2d 1425 (1989).

The automatic stay was terminated on June 21, 1990, when the bankruptcy court docketed its judgment denying O'Lane a discharge. O'Lane immediately sent notice to Spinney that the stay had been terminated; however, Spinney did not file her renewal affidavit until more than sixty days had elapsed. We are forced to conclude, therefore, that even if 108(c) would have operated to provide Spinney an additional thirty-day period within which to renew her judgment, her effort to do so was untimely.

Finally, Spinney argues that principles of equity should serve as a basis for sustaining the district court's ruling. Unfortunately, we are not in a position to rule on the availability of an equitable basis for affirming the district court's rejection of O'Lane's motion to terminate the receivership. The legality of the receivership is dependent upon the continuing validity of Spinney's judgment against O'Lane. Although there is no basis in law for legally preserving or resuscitating the judgment, there would be a basis for invoking the doctrine of equitable tolling during the period of O'Lane's bankruptcy proceedings if it could be shown that O'Lane had no legitimate basis for seeking protection under the Bankruptcy Act. In other words, if it could be demonstrated that O'Lane's bankruptcy petitions offered no legitimate prospect or intention of a discharge of his indebtedness, and that the filings were simply a subterfuge to avoid satisfying Spinney's judgment, then the district court could properly conclude that the Spinney judgment was subject to preservation and continuing validity based upon the doctrine of equitable tolling. *See generally* Copeland v. Desert Inn Hotel, 99 Nev. 823, 673 P.2d 490 (1983).

Because this court is in no position to determine whether the requisite support for invoking an equitable tolling exists, we must remand this matter to the district court to provide Spinney an opportunity to prove, if she can, that an evidentiary foundation exists for equitable relief and the continuation of the receivership. In the event Spinney is unable to prove the requisite factual and legal basis for equitable relief, the receivership must be terminated.[3]

## CONCLUSION

For the foregoing reasons, we remand this matter to the district court for purposes of conducting an evidentiary hearing in order to determine, consistent with this opinion, whether the doctrine

---

[3]We note that Spinney's counsel on appeal did not represent Spinney in her ineffectual attempts to satisfy or preserve her judgment against O'Lane.

of equitable tolling applies.[4] In the event Spinney evinces no desire to participate in such a hearing, the district court is instructed to promptly terminate the receivership.

ROSE, C. J., and SPRINGER, J., concur.

YOUNG, J., with whom SHEARING, J., joins, dissenting:

I respectfully dissent. NRS 11.190(1)(a) clearly provides that a judgment creditor has six years to collect upon a judgment. There is nothing within this provision nor is there any principle contained in the United States Bankruptcy Code that justifies the result of the majority decision.

The plain and undisputed facts of this case provide that Spinney obtained a judgment against O'Lane and failed to protect that judgment by filing for recertification within the statutory window provided by NRS 17.214. Although I find O'Lane's wranglings in bankruptcy court repugnant, they do not warrant application of equitable tolling. Oftentimes difficult and emotional cases create bad precedent. This is such a case.

The majority's decision cites Copeland v. Desert Inn Hotel, 99 Nev. 823, 673 P.2d 490 (1983), and concludes that the doctrine of equitable tolling may have preserved Spinney's judgment while O'Lane was in bankruptcy. My colleagues suggest remand to determine whether O'Lane sought bankruptcy protection as a "subertfuge" to avoid satisfying Spinney's judgment. I submit that no action upon remand or any further findings by the district court could support the application of equitable tolling.

In *Copeland,* Nevada's only equitable tolling case, we reversed a district court summary judgment order, reasoning that equitable tolling preserved a claimant's unlawful discharge cause of action. *Id.* at 826, 673 P.2d at 492. The claimant in *Copeland* did not file a timely anti-discrimination charge against her employer because she relied upon statements from the Nevada Equal Rights Commission (NERC) that they would look into the matter and "get back to" her. *Id.* at 825, 673 P.2d at 491. The court focused upon the public policy goals of Nevada's anti-discrimination laws and the claimant's reliance upon statements made by NERC. We held that equitable tolling applied in the context of Nevada's anti-discrimination employment statutes because it effectuated the laudable goals contained therein. We elaborated upon the holding by asserting that several factors should be examined before applying equitable tolling in a given case. Among those factors was

---

[4]In the event Spinney needs to engage in discovery in order to present an evidentiary basis for an equitable tolling, we are confident the district court will provide an adequate opportunity for her to do so.

consideration of the claimant's diligence in pursuing the claim for relief. *Id.* at 826, 673 P.2d at 492.

The facts of this appeal simply do not fit within the definition or purpose of equitable tolling. The factors listed in *Copeland* cannot be satisfied. Spinney did not diligently pursue her remedy in the instant case. It is inescapable that Spinney realized she had a viable judgment against her former doctor and let that judgment lapse without recertification. O'Lane's underlying conduct, no matter how egregious, had nothing to do with that failing.

I fear that preserving Spinney's judgment will open the door and allow a litigant to challenge statute of limitations prohibitions any time a defendant has engaged in some form of non-related and allegedly reprehensible conduct. I am also concerned that the majority's decision muddies the legal waters and will create issues of fact in almost every forthcoming statute of limitations summary judgment decision.

Although this case represents the tragedy that may ensue when a lawyer neglects a filing deadline, it does not merit waving the equitable tolling wand to circumvent plain statute of limitations requirements. Spinney's loss of a collection remedy appears to be a garden variety case of nonfeasance. Her remedy rests in a claim against her lawyer and not with this court's application of equitable tolling.

For the foregoing reasons, I would reverse the district court's ruling. I therefore respectfully dissent from the majority opinion.