. **STATEWIDE FUNDING CORPORATION,**
Appellee,

v.

**Winifred A. REED, Appellant.**

**No. 85363.**

Court of Appeals of Oklahoma,
Division No. 4.

Sept. 10, 1996.

---

Bart A. Boren, Williams, Luttrell & Boren, P.C., Oklahoma City, for Appellee.

Michael T. Braswell, Braswell & Associates, Inc., Oklahoma City, for Appellant.

REIF, Judge.

This appeal arises from a foreclosure proceeding. Defendant debtor Winifred Reed challenges both the judgment of foreclosure and the order for deficiency. She basically contends that the trial court erred (1) by denying her petition to vacate the foreclosure judgment, and (2) by entering a deficiency upon an untimely motion and without allowing her to prove the property's fair market value. Upon review, we hold that the trial court did not abuse its discretion in denying the petition to vacate on the grounds advanced by Debtor. We also reject the assignments of error concerning the order for deficiency and affirm.

In her petition to vacate, Reed argued that the foreclosure judgment and sheriff's sale should be set aside (1) because of payments she had made on the arrearage just prior to default judgment being entered, and (2) due to lack of notice concerning the judgment and confirmation of the sheriff's sale. It is undisputed, however, that Reed had not paid the total arrearage by the time creditor Statewide Funding Corporation sought the default judgment and she had not entered an appearance or filed an answer. In view of these facts, the trial court did not err in denying vacation of the foreclosure judgment, because the payments did not af-

fect Creditor's right to foreclose[1] and her default did not entitle her to notice of the foreclosure judgment. As concerns the sufficiency of notice concerning confirmation of the sheriff's sale, the record reflects that the notice was sent to Reed's address that appeared in the record.[2] Her assertion that Creditor knew she was absent from that address is not supported by the record. Neither the payments she made nor the notice insufficiencies about which she complains, warranted vacation of the foreclosure judgment or the sheriff's sale.

■ The controversy over the timeliness of Creditor's motion for deficiency stems from the fact that Reed filed bankruptcy three days after the sheriff's sale of the property. The question is the effect of the bankruptcy stay on the ninety-day period following the sheriff's sale in which Creditor was required to file a motion for deficiency under 12 O.S.1991 § 686.

■ Debtor's brief in chief initially argued that the stay did not prevent the filing of the motion for deficiency, but only the prosecution of the motion. Debtor asserted that Creditor's failure to file the motion for deficiency during the 90–day statutory period barred recovery of any deficiency.[3] In response, Creditor's answer brief argued that it could not file its motion until the stay was lifted, and that 11 U.S.C. § 108(c) (1994) gave Creditor the remaining 87 days of the 90–day period *after* the lifting of the stay in which to file the motion for deficiency. In reply, Debtor challenged Creditor's interpretation of section 108(c) and argued that the 90–day period continued to run while the stay was in effect. Debtor maintains that the 90–day limitation period ran out while the stay was in effect, leaving Creditor the 30–day period under section 108(c)(2) *following* the lifting of the stay in which to file its motion. There is no dispute that the stay

was lifted on September 14, 1994, and the motion for deficiency was filed eighty-four days later on December 7, 1994.

Section 108(c) provides, in pertinent part: [I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 . . . with respect to such claim.

The greater weight of the case law interpreting this section supports Debtor's general position that the bankruptcy stay does not in and of itself toll a limitation period. *See Thurman v. Tafoya,* 895 P.2d 1050 (Colo. 1995). However, a bankruptcy stay can trigger suspension of a limitation period under applicable state law, including state common law. *Id.* at 1055. *Turner and Boisseau, Chartered v. Lowrance,* 18 Kan.App.2d 332, 852 P.2d 517, 519–20 (1993); *Peterson v. Texas Commerce Bank–Austin, National Ass'n,* 844 S.W.2d 291 (Tex.Ct.App.1992).

As the *Peterson* case points out, "section 108(c) does not itself restrict the source of the suspension to specialized statutes." *Id.* at 294. Indeed, section 108(c) expressly recognizes that *"any* suspension" will be counted in determining whether the time remaining on a statutory period or the 30–day period of section 108(c)(2) is the "later" period. *Peterson* held that a suspension occurred in that case under the Texas common law rule that the time during which a person is prevented from exercising a legal remedy by the pendency of legal proceed-

---

1. The bankruptcy court adjudicated Reed's rights concerning the payments she made on the arrearage which resulted in a credit toward judgment. This credit was considered in determining of the deficiency.

2. By this point in the proceedings, Reed had entered an appearance.

3. This position was apparently abandoned in favor of the position in her reply brief concerning Creditor's alleged untimely filing under 11 U.S.C. § 108(c)(2) (1994). In any event, this position is contrary to the express language of 11 U.S.C. § 362(a)(1) (1994) and *Citizens National Bank of Evans City v. Gold,* 439 Pa.Super. 254, 653 A.2d 1245 (1995).

ings should not be counted against him in determining whether limitations have barred his right.

Oklahoma has a similar common law rule set forth in *Lee v. Epperson,* 168 Okla. 220, 32 P.2d 309 (1934). The first syllabus of *Lee* states:

Where the character of legal proceedings is such that the law restrains one of the parties from exercising a legal remedy against another, the running of the statute of limitations applicable to the remedy is postponed, or if it has commenced to run, is suspended, during the time the restraint incident to the proceedings continues.

The cases of *McGee v. Kirby,* 189 Okla. 488, 118 P.2d 199, 200 (1941), and *Johnson v. Johnson,* 182 Okla. 293, 77 P.2d 745, 747 (1938) (citations omitted), similarly hold that " '[w]henever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right.' "

■ It is reasonably clear that the 90–day period of section 686 is the type of limitations period for the pursuit of remedies upon which Oklahoma's common law suspension rule was meant to operate. "The judicial determination of the amount of deficiency [under section 686] is a post-judgment prerequisite to the judgment creditor's pursuit of further process in satisfaction of the judgment [of foreclosure]." *Mehojah v. Moore,* 744 P.2d 222, 225 (Okla.Ct.App.1987) (approved for publication by the Oklahoma Supreme Court) (citations omitted). It is "a *supplemental* order ... which allows the judgment creditor to obtain a writ of general execution to satisfy the deficiency amount." *Id.* "The restrictions [of section 686] are entirely *upon the right of execution." Id.* at 226. In the instant case, Creditor was restrained from pursuing its remedies of a deficiency determination and general execution to collect the balance of a previously entered judgment. This restraint was by the paramount authority of the bankruptcy court. Applying Oklahoma's common law suspension rule to section 686, as 108(c)(1) expressly

allows, leads us to the same conclusion that was reached by the court in *Peterson:*

After the automatic stay has been lifted, a claimant should benefit from the [common law] tolling [i.e. suspension] of the statute of limitations for the period the stay was imposed and be permitted to bring suit during the *remaining period* granted by the statute of limitations.

*Id.* at 295 (emphasis added) (footnote omitted).

■ Lastly, Debtor contends that the trial court erred by not allowing her to prove the property's fair market value and determining the deficiency on summary judgment. However, review of Debtor's objection to Creditor's motion for summary judgment and motion for deficiency fails to disclose that she offered any evidentiary material in support of a proposed fair market value, or to controvert the appraised value used at the sheriff's sale. Additionally, the journal entry granting the deficiency recites that Debtor was represented by counsel at the hearing on Creditor's pending motions and that the court "heard the evidence and arguments of and propositions of counsel." It is not clear what "evidence" was heard, but it was incumbent upon counsel for Debtor to at least make an offer of proof at this time concerning her valuation of the property in order to preserve this issue for review. Under the Oklahoma Evidence Code, "[e]rror may not be predicated upon a ruling that ... excludes evidence unless ... the substance of the [excluded] evidence was made known by offer." 12 O.S.1991 § 2104(A)(2).

The foreclosure judgment and the order for deficiency are AFFIRMED.

TAYLOR, P.J., concurs.

RAPP, C.J., dissents.

RAPP, Chief Judge, dissenting.

I vigorously dissent from the majorities' view for the reasons herein stated.

## I. BACKGROUND

Reed executed a promissory note and real estate mortgage to National Home Financing Corporation, Statewide Funding's predeces-

sor in interest, on September 20, 1979, and defaulted. Statewide filed an action on the note and foreclosure proceedings on the mortgage on December 15, 1992.

Statewide properly served Reed, who failed to enter an appearance. The trial court entered a default judgment against Reed on January 20, 1993.

A sheriff's sale of the mortgaged property was held on May 11, 1993. Statewide gave Reed notice of the sheriff's sale by mailing notice to her last known address and by publication. Statewide purchased the property for the property's appraised value of $25,000. On the date of sale, Statewide filed a Motion to Confirm Sheriff's Sale and once again mailed notice to Reed's last known address and published the notice.

Reed filed for Chapter 13 bankruptcy three days after the sheriff's sale, on May 14, 1993. The trial court, unaware of Reed's bankruptcy, entered its Order Confirming Sheriff's Sale on June 1, 1993.

Reed's Chapter 13 bankruptcy was later converted to a Chapter 7 because of her failure to meet the Chapter 13 plan's commitments. On Statewide's motion, the bankruptcy court entered its Order Authorizing Abandonment of Property and Relief From Automatic Stay on September 16, 1994. This Order annulled the automatic stay provisions of the Bankruptcy Code, authorized the bankruptcy trustee to abandon the mortgaged property, and allowed Statewide to continue its foreclosure action on whatever interest it had in the abandoned property.

In state court, Statewide again mailed Reed notice to confirm the sheriff's sale at her last known address, which was also the address Reed used in her bankruptcy proceeding. It also published the notice. The trial court entered an order confirming the sheriff's sale on October 17, 1994.

Reed dismissed her bankruptcy proceeding on November 2, 1994. Reed then filed a Petition to Vacate Judgment and Order Con-

firming Sheriff's Sale on November 28, 1994. Statewide filed its motion for a deficiency judgment against Reed on December 7, 1994. It subsequently filed a motion for summary judgment seeking to have Reed's Petition to Vacate Judgment and Order Confirming Sheriff's Sale dismissed.

After hearing argument, the trial court granted Statewide's motion for deficiency judgment on March 24, 1995, and also granted Statewide's motion for summary judgment, which sought dismissal of Reed's petition to vacate. Reed appeals.

## II. ANALYSIS

### (a) Parties' Argument

The appeal's dispositive issue centers on the trial court's entry of a deficiency judgment in favor of Statewide.[1]

Reed argues the trial court erred by entering the deficiency judgment against her because Statewide filed its motion for deficiency judgment outside 12 O.S.1991, § 686's time limits. Statewide, in response, asserts section 686's ninety-day time limit for requesting a deficiency judgment was tolled by Reed's bankruptcy, and therefore, its motion was timely filed.

Reed, initially ignoring the automatic stay provisions of the Bankruptcy Code, asserts that failure to file within the statutory ninety-day period extinguished the debt. Reed also ignores that bankruptcy is an equitable proceeding and that provisions exist under 11 U.S.C. § 108(c) (1994) to prevent a debtor from using the Bankruptcy Code as a shield to allow statutes of extinguishment, limitations, and duration to run, and then to defeat the creditor by dismissal of the bankruptcy proceeding.

Statewide argues that because Reed's bankruptcy filing produced an automatic stay under the Bankruptcy Code, the filing also tolled the remaining ninety-day period of sec-

---

1. Examination of Reed's assertions regarding default judgment and presentation of evidence shows them to be without merit. Reed alleges Statewide failed to give her proper notice of the default judgment and of the confirmation of sheriff's sale hearing. The record shows Statewide mailed, as required, a copy of the Petition, Notice of Sheriff's Sale, and the Notice of Hearing on Confirmation of Sheriff's Sale to Reed's last known address, which is also the same address shown on Reed's bankruptcy pleadings. In addition, Statewide published the notice.

tion 686 under section 108(c).[2] Statewide asserts that since Reed's bankruptcy occurred three days after the sheriff's sale, it should have an additional eighty-seven days from the date of Reed's dismissal of the bankruptcy proceedings to continue its action.[3]

### (b) The Statute

Under 12 O.S.1991, § 686(1), a motion for deficiency judgment must be filed *either simultaneously with the motion to confirm sheriff's sale or within ninety days after the date of the sheriff's sale.*[4] Failure to file the motion for deficiency judgment simultaneously with the motion to confirm sheriff's sale, or within the ninety-day period of the sale, extinguishes the debt. *Reliable Life Ins. Co. v. Cook*, 601 P.2d 455 (Okla.1979).

It is undisputed Statewide did not file its motion for deficiency judgment simultaneously with its motion to confirm sheriff's sale or within ninety days after the date of the sheriff's sale. The sheriff's sale was held on May 11, 1993. Statewide filed its motion for deficiency judgment on December 7, 1994, more than ninety days after the sheriff's sale.

### (c) Issue Examined

The issue here is one of first impression. The issue is whether the statutory period under section 686(1) is tolled or suspended by the automatic stay provisions of the Federal Bankruptcy Code when a debtor in a foreclosure proceeding files bankruptcy proceedings after the occurrence of a sheriff's sale of mortgaged property and prior to the creditor's filing of a motion for deficiency judgment.

### (d) Majority View

There is a split of authority among courts which have addressed similar issues on statutes of limitations and duration. The majority view is that where a statute of limitations, expiration, or duration expires while the debtor is under the protection of the Bankruptcy Code's automatic stay provisions, the creditor is provided relief under 11 U.S.C. § 108(c) by the grant of an additional thirty days after the lifting of the bankruptcy stay.[5]

Cases setting out the perceived majority view and their astute analysis of 11 U.S.C. § 108(c)'s [6] legislative history are first exam-

---

**2.** The court in *Thurman v. Tafoya*, 895 P.2d 1050, 1054 (Colo.1995), note 5, states:

In defining the verb "toll," Black's Law Dictionary states: "To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority." Black's Law Dictionary 1488 (6th ed. 1990). Thurman uses the word toll in the context of section 108(c) to mean that the statute of limitations is suspended or does not continue to run. Unless otherwise noted, throughout this opinion we use the word "toll" to mean suspend.

**3.** Statewide's brief states in part:

The dismissal of the bankruptcy occurred on November 2, 1994.... Therefore, Plaintiff had eighty-seven days from November 2, 1994 to file its Motion for Leave to Enter Deficiency Judgment. Motion for Leave to Enter Deficiency Judgment was filed December 7, 1994, which was well within the eighty-seven-day period.

**4.** 12 O.S.1991, § 686, states in part:

[N]o judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this Act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or

in any event within ninety (90) days after the date of the sale, the party to whom such residue may be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct. Section 686 is more than a statute of limitations; it is a statute of extinguishment. *See International Paper Co. v. Whitson*, 595 F.2d 559 (10th Cir.1979); *Apache Lanes, Inc. v. National Educators Life Ins. Co.*, 529 P.2d 984 (Okla. 1974).

**5.** The following cases express the majority view. *See Rogers v. Corrosion Products, Inc.*, 42 F.3d 292 (5th Cir.1995); *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2d Cir.1993); *In re Crysen*, 166 B.R. 546 (Bankr.S.D.N.Y.1994); *Grotting v. Hudson Shipbuilders, Inc.*, 85 B.R. 568 (W.D.Wash.1988); *In re Baird* 63 B.R. 60 (Bankr.W.D.Ky.1986); *Thurman v. Tafoya*, 895 P.2d 1050 (Colo.1995); *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850 (Colo.1992).

**6.** 11 U.S.C. § 108(c), provides, in part:

[I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil

ined. The minority view is set out in later paragraphs.

A plain reading of section 108(c) establishes that it *does not expressly provide* for the tolling of any statutory periods. It allows the statutory period to run. *Thurman,* 895 P.2d at 1055, states:

> Both the Second Circuit Court of Appeals and the Fifth Circuit Court of Appeals support our conclusion that the plain language of section 108(c) does not operate to suspend the running of statute of limitations periods during the pendency of a bankruptcy stay.

However, while section 108(c) does not toll the period, *Thurman* also recognizes that it provides an additional thirty days after the annulling of the bankruptcy stay or termination of the bankruptcy proceeding if the applicable statute of limitations, extinguishment, or duration has expired.

The reference to "suspension of such period" in section 108(c)(1) does not stop the running of the statute of limitations. Instead, as stated in *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir.1993) (emphasis added), the language:

> merely incorporates suspensions of deadlines that are expressly provided in *other* federal or state statutes.

Any ambiguity with respect to this "suspension" reference in § 108(c)(1) is cleared up by examining the provision's legislative history. *This history makes evident that § 108(c)(1) refers to only "special suspensions" that are found in non-bankruptcy provisions* such as the Internal Revenue Code. 124 Cong.Rec. H11,109 (daily ed.

Sept. 28, 1978); *accord* 2 Lawrence P. King, *Collier on Bankruptcy* ¶ 108.04 (15th ed. 1993); *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 318, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6275.

In short, section 108(c) extends the terminated limitations period an additional thirty days after the bankruptcy stay is lifted or annulled. Following this rationale, the Fifth Circuit held, based on the plain wording of the statute, that:

> s 108(c) does not create a separate tolling provision. . . . The statute plainly states that for the time period to be suspended, other federal or state law must mandate it and then be incorporated through s 108(c). *Otherwise, a party must file suit within the thirty-day grace period after the end of the stay.*

*Rogers v. Corrosion Products, Inc.,* 42 F.3d 292, 297 (5th Cir.1995) (citations omitted) (emphasis added).

This interpretation is consistent with giving full effect to 12 O.S.1991, § 686, as a whole. If it were concluded that section 108(c) suspends section 686's ninety-day requirement for filing during a pending bankruptcy proceeding, or operated as a "common law restraint" as the majority would hold, this would be totally inconsistent with the meaning and intent of section 108(c)[7]. Such an interpretation would make it impossible for section 686's ninety-day time period to expire during the stay. Moreover, 12 O.S.1991, § 686 itself does not contain any language authorizing or recognizing such a suspension or restraint which could be incor-

---

action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

    (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

    (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . .

**7.** As eloquently explained by the Colorado Supreme Court in *Thurman,* 895 P.2d at 1056 (citations omitted) (emphasis added) (footnote omitted):

> Because we find the meaning of section 108(c) to be apparent from the words of the

statute, it is not strictly necessary to consider the statute's legislative history. However, examination of the legislative history of section 108(c) provides further support for our interpretation. *The predecessor to section 108(c),* 11 U.S.C. § 29(f) (1976), *provided specifically for suspension of statute of limitations periods while an individual is in bankruptcy. . . . If Congress had intended section 108(c)(1) to do the same, it would have stated so expressly . . . .* The fact that Congress did not do so lends further support to our conclusion that section 108(c) does not suspend the running of a statute of limitations period while a debtor is involved in bankruptcy proceedings.

porated into 11 U.S.C. § 108(c) for implementation. Nor does the statute, 11 U.S.C. § 108(c), in any way "restrain" the creditor from exercising any legal remedy as advanced by the majority here in their reliance on *Lee*. The majorities' interpretation is clearly against the precise terms of section 108(c) and is contrary to the equitable nature of the section and of the Bankruptcy Code, which provides an additional thirty days to maintain the action after expiration of any limitations. The clear wording of section 108(c) anticipates that a limitations period may expire while the debtor is in bankruptcy. *O'Lane v. Spinney*, 110 Nev. 496, 874 P.2d 754, 756 (1994).

### (e) Minority View

The minority view [8] holds that a statute of limitations is tolled by the bankruptcy stay. However, it is noted that courts appear to be receding from the minority view, as evidenced by the Second Circuit. In deciding *Aslanidis*, the Second Circuit revisited an earlier case, *In re Morton*, 866 F.2d 561 (2d Cir.1989). The court in *Morton* originally held that section 108(c) tolls the period limiting judgment liens on real property until the automatic stay is terminated. The *Morton* court, however, failed to explicitly decide whether the limitations period was suspended during the bankruptcy stay or whether the bank merely had thirty days to act after the stay was lifted. When the Second Circuit again addressed this issue in *Aslanidis*, it distinguished its decision in *Morton* by holding that *Morton* only addressed what occurred during the period of the bankruptcy stay. *Aslanidis*, 7 F.3d at 1073. The Second Circuit then decided that 11 U.S.C. § 108(c) allowed a thirty-day savings period upon conclusion of the bankruptcy proceedings or stay even if the limiting time had expired. *Id.* Thus, even in the minority view set out in *Morton*, that court subsequently adopted the majority view.

### III. CONCLUSION

Analysis shows 11 U.S.C. § 108(c) *does not* toll the running of a statute of limitations or extinguishment under 12 O.S.1991, § 686, for the amount of time a debtor is properly under the protection of a bankruptcy court. Further, 11 U.S.C. § 108(c) does not suspend the running of the statute of limitations or extinguishment under 12 O.S.1991, § 686 during the period of bankruptcy protection. If the Oklahoma legislature had intended such a tolling or suspension period in section 686 in the event of a bankruptcy, it could have so provided. Its failure to do so now prevents, in my opinion, the creation of one by judicial fiat under the guise of a common law "restraint of remedy." Moreover, the effect of the majorities' ruling under this common law rationale is to negate the effect of 11 U.S.C. § 108(c) in Oklahoma.

The majority also overlooks the long-held rule that courts resort to common law only to fill a void not covered by statute. In Oklahoma, the common law supplements, but does not control, a statute. *See* 12 O.S.1991, § 2. The legislature in 12 O.S.1991, § 686 set out the required period for the filing of a deficiency—ninety days. The Federal Bankruptcy Act, in 11 U.S.C. § 108(c), provides that if this filing period expires during the proceedings, the creditor is given an additional thirty days to act after the lifting of the stay. Thus, the two statutes preclude any usurpation of the common law where the rights and duties of the parties are set out by statute. Furthermore, the parties' rights and duties under each statute are statutorily created and are not derived from the common law.

The majority here has placed its faith in *Turner* and *Peterson*. Both are clear exceptions and inapposite to the common law application. *Turner* involves the construction

**8.** The minority view holding that statutes of limitations are tolled may be found in *In re Morton*, 866 F.2d 561 (2d Cir.1989); *In re Hunters Run Ltd.*, 875 F.2d 1425 (9th Cir.1989); *In re National Oil Co.*, 112 B.R. 1019 (Bankr.D.Colo.1990); *Garbe Iron Works, Inc. v. Priester*, 99 Ill.2d 84, 75 Ill.Dec. 428, 457 N.E.2d 422 (1983); *Major Lumber Co. v. G & B Remodeling Inc.*, 817 S.W.2d 474 (Mo.Ct.App.1991). However, it is believed these cases result from language of the statute prior to enactment of the present 11 U.S.C. § 108(c).

of a Kansas statute that permitted the suspension of time limits in the face of an injunction. The Kansas Court of Appeals construed 11 U.S.C. § 108(c) to be an injunction. In applying its statute, the court tolled the limitations period, which is a permitted action in face of a specific statute. *Peterson* involved the nondischargeability of a debt in bankruptcy due to fraud. This decision covering a nondischargeable debt created by fraud is also a permissible exception using common law to enter an area not covered by statute. This is a proper application of common law and consistent with the equitable principles of bankruptcy. The Texas court recognized *it was not construing 11 U.S.C. § 108(c)* when it stated:

> [T]he bankruptcy court in this case held a claim nondischargeable. The above excerpt reveals that the federal interest does not thereafter extend to whether or how state law, through statutes of limitations or the suspension thereof, allows suit on such claims.

*Peterson*, 844 S.W.2d at 295.

Thus, if a statutory period expires under 12 O.S.1991, § 686 during the pendency of a bankruptcy stay and there are, as here, no applicable federal or state suspension statutes, then section 108(c) provides a creditor an equitable remedy by granting an additional thirty days to initiate or continue its action after notice of the lifting of the bankruptcy stay or termination of the bankruptcy.

## IV. DISSENT HOLDING

Statewide did not file its motion for deficiency judgment within the thirty-day period allowed by section 108(c) after the Bankruptcy Court entered its Order lifting the bankruptcy stay on September 16, 1994, and is thus barred from judgment in its favor. I also hold that the "common law restraint" concept based on the Oklahoma common law usage advanced by the majority is but a vehicle to avoid the majority view set forth in *Thurman* [9]. This "common law restraint" concept now allows the fabric of sound statutory construction and good legal practice to be stretched to include practitioners having the inability to apply the plain meaning of the statutes in question, 12 O.S.1991, § 686 and 11 U.S.C. § 108(c), to the basic foreclosure procedure.

Thus, I would reverse the trial court's order awarding Statewide a deficiency judgment against Reed, and hold Statewide failed to file timely.

---

9. *See supra* text accompanying note 7.