In re JACK/WADE DRILLING, INC., Debtor.

Paul N. DeBAILLON, Trustee,

v.

Jack WILSON, et al., Defendants.

**Bankruptcy No. 95–50469.
Adversary No. 96–5016.**

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

July 15, 1997.

Paul DeBaillon, Lafayette, LA, trustee.

Marilyn Castle, Lafayette, LA, for Jack Wilson.

Stewart Peck, New Orleans, LA, for Baker Hughes.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

Jack/Wade Drilling, Inc. ("Jack Wade") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 27, 1995. Paul N. DeBaillon ("Trustee") is the duly appointed, qualified and acting chapter 7 trustee. Assets of the estate, consisting of drilling rigs and related equipment were sold at public auction on October 31, 1995. Pursuant to order of this court dated August 31, 1995, the sale of the assets was free and clear of liens and encumbrances, with liens and encumbrances attaching to the proceeds of the sale of such assets. The sales proceeds totalled $1,639,117.75, with the proceeds attributable to each individual rig broken down as follows:

| | |
|---|---|
| Rig No. 1 | $223,508.83 |
| Rig No. 2 | $263,536.83 |
| Rig No. 3 | $182,447.83 |
| Rig No. 4 | $224,275.83 |
| Rig No. 5 | $318,972.70 |
| Rig No. 6 | $426,375.73 |

Numerous parties have filed secured claims asserting either conventional mortgages or liens pursuant to the Louisiana Oil & Gas Lien Statute, LSA–R.S. 9:4861, *et seq.*

The Trustee commenced this adversary proceeding seeking a determination of the priority, validity, extent and ranking of liens, as well as for equitable subordination of the lien of Jack Wilson ("Wilson"). In addition to Wilson, the following parties are named as defendants: Timco Services, Inc., Ambar, Inc., Baker Hughes Oilfield Operations, Inc. ("Baker Hughes"), Dia–Log Company, Specialty Rental Tools, Inc. ("Specialty"), TIW Corporation, Halliburton, Eagle Pipe & Supply, Inc., Garber Industries, Inc., Houston Engineers, Inc., Wilson Industries, Inc., Duke Transportation, Inc., Duke Oil Company, Inc., James R. Savoie–Sheriff, Southern Mud and Equipment, Inc., Kenneth Hebert d/b/a Ken's Oilfield & Engine Repair, and Rig Monitoring Systems, Inc.

The trustee seeks relief in the form of a judgment, finding and fixing the existence, extent and priority of the security interests of the defendants against the proceeds of the assets sold. The Trustee also seeks to subordinate the security interest of Wilson under the principles of equitable subordination.

Three matters are presently before the court:

1–Motion for Partial Summary Judgment by Baker Hughes Oilfield Operations, Inc.

2–Motion for Summary Judgment by Specialty.

3–Objections to Liens filed by Wilson, wherein the validity of numerous liens[1] is challenged.

A hearing on these matters was held on April 25, 1997. After hearing argument from counsel, the court took all three matters under advisement.

The following is a summary of the arguments made in each motion or objection. As many of the issues raised by each motion or objection overlap, the court will address the issues separately.

### (1) Baker Hughes Motion for Partial Summary Judgment

Baker Hughes filed a Motion for Partial Summary Judgment seeking a judgment that its lien pursuant to LSA–R.S. 9:4861 is valid and enforceable and outranks the alleged security interest of Wilson. Baker Hughes takes the position that its lien outranks Wilson's UCC security interest based upon LSA–R.S. 9:4862(A)(2), which provides that in order for a UCC financing statement to prime a valid lien claim, the UCC statement must be filed prior to the first date that materials and services were furnished. In the present case, there is no dispute that the first labor and services were performed in July 1994 on Rig # 2 (Exhibit "V" to Baker Hughes Motion) and in August 1994 on Rig # 6 (Exhibit "I" to Baker Hughes Motion), which dates were prior to the filing of Wil-

---

1. Liens filed by the following parties are the subject of Wilson's challenge: Baker Hughes Oilfield operations, Inc., d/b/a Hughes Christensen, Duke Transportation, Inc., Southern Mud & Equipment, Inc, Kenneth Hebert d/b/a Ken's Oil- field and Engine Repair, Francis Drilling Fluids, Ltd., Garber Industries, Inc., Wilson Industries, Inc., Houston Engineers, Inc., The Dia–Log Company, Rig Monitoring Systems, Inc., Ambar, Inc., and Specialty Rental Tools, Inc.

son's UCC financing statements on January 6 and 24, 1995, respectively (Exhibit "D" to Baker Hughes Motion)

Further, if the Baker Hughes' lien is valid, it becomes effective on the date on which the first labor and services were performed. *United States v. DuPriest,* 305 F.Supp. 714, 716 (W.D.La.1969). A valid Baker Hughes lien on Rigs # 2, # 5, and # 6, will prime the UCC security interest of Wilson on those rigs. Thus, the issue is the validity of the Baker Hughes lien.

Wilson opposes the Motion for Partial Summary Judgment alleging that Baker Hughes does not have a valid lien on either Rig # 2 and Rig # 6, or in the alternative, if Baker Hughes does have a valid lien, such lien does not outrank Wilson's UCC security interest. Wilson's argument is based upon the fact that the Baker Hughes' liens on Rigs # 2 and # 6 were filed after the rigs were removed from the well site. Wilson contends that under Louisiana law the liens only affect property located at the well site when the lien is filed.

### (a) Rig # 2

Wilson claims that Rig # 2 was moved from the Henry No. 3 Well site on November 21, 1994. As evidence of this fact, Wilson attaches his own affidavit stating that Rig # 2 was removed from the Henry No. 3 Well site on November 21, 1994, and transported to an abandoned location off the Henry No. 3 Well site but still on the leased property. Baker Hughes' liens were recorded on April 19 and 20, 1995 (one of the liens filed on April 20 was amended on April 26, 1995) (Exhibits "E", "H", "Q", "U", and "N" to Baker Hughes Motion). Baker Hughes claims that Rig # 2 was removed from the Henry No. 3 Well site on April 20, 1995. In support of its position that Rig # 2 was moved on April 20, 1995, Baker Hughes attaches the affidavit of Justin Duke, the president of Duke Transportation, Inc., who was hired to move Rig # 2. Mr. Duke's affidavit states that Rig # 2 was moved from the Henry No. 3 Well site on April 20, 1995. Thus, there appears no dispute that Rig # 2 was moved off the actual well site on Novem-

ber 21, 1994, but remained on the leased property until April 20, 1995.

### (b) Rig # 6

Wilson asserts that Rig # 6 was moved from the Hebert No. 1 Well site on January 21, 1995. The liens of Baker Hughes were filed on April 20, 1995 (Exhibits "E", "H", "Q", "U", and "N" to Baker Hughes Motion). Baker Hughes does not dispute that Rig # 6 was moved from the site on January 21, 1995. However, Baker Hughes argues that Louisiana law provides that all equipment used in the drilling or operation of the well is subject to the liens irrespective of whether the equipment was located upon the lease at the time the liens were filed.

### (c) Rig # 5

Baker Hughes also asserts a lien on Rig # 5. No opposition was filed to challenge the validity of this lien.

### (2) *Specialty Motion for Summary Judgment*

Specialty filed a Motion for Summary Judgment contesting the liens of Francis Drilling Fluids, Ltd. ("Francis"), Garber Industries and their subsidiaries, Laydown Service, Inc., Offshore Casing Crews, Inc., and Offshore Hammers, Inc. ("Garber"), Houston Engineers, Inc. ("Houston"), Kenneth Hebert, d/b/a Ken's Oilfield and Engine Repair ("Hebert"), Rig Monitoring Systems, Inc. ("Rig Monitoring"), Baker Hughes, The Dia–Log Company and/or Dilo, Inc. ("Dia–Log"), Ambar, Inc. ("Ambar"), and Halliburton Company ("Halliburton").

Specialty disputes the liens of the various parties based upon three arguments, namely:

(1) that such liens are invalid as each was filed after the rigs were moved from the site;

(2) that such liens were not timely filed within 180 days of the last date of the delivery of labor, services, or materials as required by LSA–R.S. 9:4862; and/or

(3) that suits were not instituted within 1 year after the liens were filed as required by LSA–R.S. 9:4865.

First, as to the third argument, the parties have agreed that the imposition of the automatic stay under 11 U.S.C. § 362, as well as the filing of this adversary by the Trustee cures the failure of certain parties to timely institute suit within 1 year after the lien is filed. The liens of Dia–Log, Ambar and Halliburton have been disputed by Specialty only on this basis. Thus, as to these parties, the Motion for Summary Judgment filed by Specialty is denied.

The liens of the remaining parties named by Specialty are disputed based upon the other two grounds and will be addressed below.

### (3) Wilson's Objection to Liens

Wilson has filed an Objection to Liens challenging the liens of Baker Hughes, Duke Transportation, Inc. ("Duke"), Southern Mud & Equipment, Inc. ("Southern Mud"), Hebert, Francis, Garber, Wilson Industries, Inc. ("Wilson Industries"), Houston, Dia–Log, Ambar and Specialty. Wilson asserts three arguments for challenging these claims:

(1) such liens are invalid as each was filed after the rig was moved from the well site;

(2) such liens were not timely filed within 180 days of the last date of the delivery of labor, services, or materials as required by LSA–R.S. 9:4862; and/or

(3) the claimants executed lien waivers and therefore waived their rights under the Louisiana Oil & Gas Lien Act, LSA–R.S. 9:4861, *et seq.* ("Act")

### LAW AND ANALYSIS

### (A) LIENS FILED AFTER REMOVAL OF THE RIG FROM THE WELL SITE

The validity of several of the liens is disputed on the basis that each was filed after the rig was removed from the well site. Obviously, the provisions of the Act are applicable to the issues in the present case. However, as each lien at issue arose and was recorded prior to the 1995 Amendment of

LSA–R.S. 9:4861, the present form of the statute is not applicable. The court must look to the pre–1995 version of the statute.

Apparently no Louisiana court has decided the specific issue presented in the instant case under LSA–R.S. 9:4861 prior to the 1995 amendments. Although the parties reference two cases as having addressed this discreet issue, namely *Ogden Oil Company, Inc. v. Venture Oil Corp.*, 490 So.2d 725 (La.App. 3rd Cir.1986) and *Ogden Oil Company v. Servco*, 611 F.Supp. 572 (M.D.La. 1985), these two decisions were decided prior to the amendment of the Act in 1986 which was the first statutory requirement that such liens be recorded. Accordingly, these decisions are not dispositive of the issue presently before the court.

Further, the decision by the Louisiana First Circuit Court of Appeal[2] that a lien filed pursuant to the Act is effective against property moved onto the lease after the lien has been recorded does not relate directly to the issue presently pending. Finally, the only comment made by the Fifth Circuit on this issue was in a footnote in which the Court refrained from ruling on the issue but noted that

> [b]ecause the Louisiana Legislature now requires a person who asserts a privilege under the Act to record it in order to preserve it, we have reservations whether such a privilege applies to movable property removed from the lease before the privilege is recorded.

*Phillips Petroleum Company v. Best Oilfield Services, Inc.*, 48 F.3d 913, n. 3 (5th Cir. 1995).

Although the *Ogden* decision is not decisive as to the issue presently before this court, it does provide useful information regarding the purpose of the statue:

> Clearly, the legislature intended no artificial barriers to be interposed; and that all property and equipment used in the drilling operation of any well would be subject to the privilege in favor of those who fur-

---

**2.** *Supreme Contractors, Inc., v. Halliburton Logging Services, Inc.*, 668 So.2d 1363 (La.App. 1 Cir.1996).

nish labor, materials, supplies, or equipment.

490 So.2d at 730. The court believes that the issue presently pending can be and should be resolved by a literal reading of the statute. As stated by the Fifth Circuit,

> [w]here the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citation omitted)

*Dreher v. United States of America*, 115 F.3d 330, 332 (5th Cir.1997).

Pursuant to the Act, a person who performs labor or services *has* a privilege on the rigs and other structures attached or located on the lease. LSA–R.S. 9:4861. Such person *preserves* the privilege by filing a notice of privilege. LSA–R.S. 9:4862. Further, if the rig or other structure is removed from the lease without consent of the lien holder after the lien has "attached", the lien holder may still enforce the lien. LSA–R.S. 9:4861.2. Thus, if the lien has "attached" prior to recordation, section 4861.2 resolves this issue. However, if attachment is equivalent to recordation, section 4861.2 has no application in the instant case.

■ The court finds that under Louisiana law, the lien attaches when the person first "has" a privilege, which pursuant to section 4861, occurs regardless of recordation. The lien attaches when the person performs labor or services—recordation is only necessary to "preserve" the lien. As long as there is recordation, the lien is preserved.

■ Consequently, the lien is enforceable against any property to which it attached as long as the notice of lien is timely filed. The lien attaches to any property located on the lease during the performance of the labor or services. Accordingly, the court holds that a lien properly recorded pursuant to the Act is effective against all equipment used in the drilling or operation of the well irrespective of whether the equipment was located upon the lease at the time the notice of lien was filed.

**(B) LIENS FILED MORE THAN 180 DAYS AFTER THE LAST DATE OF SERVICES**

■ In order to preserve lien rights under the Act, a party must file a notice of the privilege within one hundred eighty (180) days after the last day of the performance of the labor or services. LSA–R.S. 9:4862. With regard to some of the claimants, the 180 day period lapsed subsequent to the filing of the bankruptcy petition on April 27, 1995. These claimants assert that the automatic stay suspended the time period for filing the notice of lien. While section 108(c) specifically extends the period for commencing a civil action if the period has not expired prior to the bankruptcy filing, there is no such extension of time for filing the lien. In fact, there is no need for an extension of time to file the notice of lien, as the notice of lien could have been filed following the filing of the bankruptcy petition. Section 363(b)(3) provides that:

> (b) The filing of a petition . . . does not operate as a stay—
>
> \*    \*    \*    \*    \*    \*
>
> (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 346(b) of this title . . . .

Section 546(b) provides that:

> (b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—
>
> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; . . .

Thus, if Louisiana law provides that a notice of lien filed within the 180 day period is effective as to third parties who have acquired rights in the property prior to the filing of the notice of lien, the automatic stay does not prevent a claimant from filing the notice of lien. The Louisiana Oil & Gas Well Lien Act requires only that the notice of privilege be filed within 180 days. LSA–R.S.

9:4862. There is no requirement that the property remain in the · possession of the lessor. The· privilege is effective against the property in spite of any transfer of ownership or possession, as long as the notice of lien is filed within 180 days. Thus, the automatic stay would not have been a barrier preventing a lien claimant from perfecting a lien under LSA–R.S. 9:4862. Therefore, the court finds that the filing of the bankruptcy petition did not affect the requirement that a notice of lien be filed within 180 days as required by LSA–R.S. 9:4862.

However, as to some of the claimants, the 180 day period lapsed prior to the filing of the bankruptcy petition, namely Francis, as to two of its liens, Wilson Industries, and Kenneth Hebert.

### (1) Francis

In its Memorandum in Support of Opposition to Objection to Liens Filed, Francis concedes that two of its liens were not timely filed, namely, a lien for $22,321.38 filed against Rig # 5 for operations performed at Sweet Lake L&O No. 1, and a lien for $17,-231.00 against Rig # 5 for work performed on the Adams' Estate No. 1. Accordingly, the court finds that these two liens asserted by Francis were not properly perfected and are therefore invalid.

### (2) Wilson Industries

■ The proof of claim of Wilson Industries states that the services were provided in conjunction with the drilling of the Davis No. 2 Well and that the services were furnished through December 30, 1994. The lien of Wilson Industries ·was filed on June 12, 1996. Jack Wilson argues that Jack/Wade did not drill a well called Davis No. 2, but did drill a well called Henry No. 2. The operations at Henry No. 2 were completed by November 5, 1993. Thus, Jack Wilson argues that the lien of Wilson Industries· must have been in reference to Henry No. 3 and was therefore too late. Wilson Industries asserts that its services were provided with respect to several wells, not just the Henry No. 3 and was therefore not untimely. The court finds that there are genuine issues of material fact as to which well · site Wilson Industries furnished services.

### (3) Hebert

Hebert filed a Notice of Claim of Kenneth Hebert d/b/a Ken's Oilfield and Engine Repair of Security Interest in Rigs of Jack/Wade Drilling Company, Inc. ("Notice of Claim") reflecting a lien on Rig # 2 and Rig # 5. Attached to the Notice of Claim is a Lien Affidavit as to Rig # 2 executed by Kenneth Hebert and filed on April 24, 1995 in Cameron Parish ("Lien Affidavit"). The Lien Affidavit states that:

> The last service, labor, and furnishing of materials was delivered on October 24, 1994.

On its face, the Notice of Claim is invalid as it was filed 182 days following the rendering of the last service, labor, and furnishing of materials, and was therefore untimely. The court finds that Hebert's lien as to Rig # 2 was not properly preserved as required by LSA–R.S. 9:4862. Thus, the objection to the claim of Hebert as to Rig # 2 is sustained.

### (C) LIEN WAIVERS

■ In his Objection to Liens, Wilson asserts that Baker Hughes, Duke and Southern Mud have waived their lien rights by executing lien waivers prior to filing their lien notices. The lien waiver executed by these parties reads as follow:

> ... that, for consideration received which is hereby acknowledged, [Duke Transportation] does by these presents waives, releases and relinquishes all rights, claims and causes of action against [Flores & Rucks, Inc ....], specifically including any right to file a lien and privilege under La. R.S. 9:4861, et. seq. for the performance of labor or services or the furnishing of equipment, materials, or supplies prior to reaching turnkey depth of 16,000' in connection the the [sic] drilling of William B. Hebert Est. No. Well located in Section 17, Township 12 South, Range 7 West, Cameron Parish, Louisiana. This waiver and release is executed in favor of [Flores & Rucks, Inc.], for consideration received directly by Appearer.

The parties who executed such lien waivers argue that the waiver and release of rights against one party operates to release only that party, not the lien against the property of other parties. The court agrees. The wording of the lien waiver clearly establishes that the parties executing the waiver is only releasing rights against the named party. While Louisiana law generally recognizes the validity of a waiver of liens, *Executive Office Centers, Inc. v. Cournoyer,* 433 So.2d 324, 327 (4th Cir.1983), the operation and effect of a waiver is not extended beyond its own plain terms. *In re Hull,* 19 B.R. 501, 510 (Bankr.Ind.1982). Under Louisiana law a waiver of statutory rights must be express and explicit. *Cargill, Inc. v. Cementation Co. of America,* 402 So.2d 213, 214 (La.App. 1st Cir.1981). The court finds that the lien waivers executed by Baker Hughes, Duke and Southern Mud only released their respective rights against the specific party named in the lien waiver.

For the foregoing reasons, the Motion for Partial Summary Judgment filed by Baker Hughes is **GRANTED;** the Motion for Summary Judgment filed by Specialty is **GRANTED IN PART and DENIED IN PART;** the Objection to Claims filed by Wilson is **SUSTAINED IN PART and OVERRULED IN PART.**

Counsel for Baker Hughes, Specialty and Wilson are to prepare proposed orders in conformity with the foregoing reasons and submit same to the Clerk of the Bankruptcy Court for signature.