2006 OK 28

**3M DOZER SERVICE, INC.,**
Plaintiff/Appellant,

v.

Barbara Moore BAKER a/k/a Barbara J. Moore a/k/a Barbara Jean Baker; Spouse, if any, of Barbara Moore Baker, real name unknown; Karen Sue Moore; Spouse, if any, of Karen Sue Moore, real name unknown; Mark D. Stewart, Sherry L. Stewart; and their unknown heirs or devisees, Defendants/Appellees,

and

Debra K. Foster; Spouse, if any, of Debra K. Foster, real name unknown; Hamm & Phillips Service Company; Terry L. Seay; Spouse of Terry L. Seay, if any, real name unknown; Dakota J. Gauley; Emily D. Gauley; Shane P. Gauley; Spouse, if any, of Shane P. Gauley, real name unknown; Carol S. Snow; and Darrel L. Snow; and their unknown heirs or devisees, Defendants.

No. 100,262.

Supreme Court of Oklahoma.

May 2, 2006.

Raymond D. Munkres, Midwest City, OK, for Plaintiff/Appellant.

Julia C. Rieman, Gungoll, Jackson, Collins, Box & Devoll, P.C., Enid, OK, for Defendants/Appellees, Barbara Moore Baker and Karen Sue Moore.

David C. Henneke, Enid, OK, for Defendants/Appellees, Mark D. Stewart and Sherry L. Stewart.

COLBERT, J.

¶ 1 On February 16, 1988, Creditor, 3M Dozer Service, Inc., obtained a judgment against Debtor, Barbara Moore Baker, in Major County.[1] Creditor filed a certified copy of its judgment in the county clerk's office, obtaining a lien of record on five pieces of real property in which Debtor held an interest. By 1991, Debtor had transferred all of her interests in the properties. At least some of the transfers were to individuals or entities with family or business ties to Debtor and at least one property was subsequently transferred back to Debtor. Creditor successfully renewed its judgment on February 11, 1993, and extended its judgment lien for five years by obtaining a writ of execution from the court clerk and filing a certified copy of the writ in the county clerk's office. On November 18, 1996, Debtor filed a petition in the United States Bankruptcy Court for the Western District of Oklahoma, Case No. 96–19165. None of the properties subject to Creditor's lien were included in Debtor's bankruptcy estate.

¶ 2 On January 26, 1998, Creditor attempted to renew its judgment and extend the judgment lien a second time by filing a "Notice of Renewal of Judgment" with the district court. The notice correctly referenced the case number and the previous renewal, but incorrectly stated the date of the original judgment. Creditor also failed to file a certified copy of the notice with the county clerk.

¶ 3 On April 30, 1998, Creditor obtained a writ of execution on Debtor's goods and chattels. The Sheriff proceeded with the sale of the interests unaffected by Debtor's bankruptcy, but the district court set aside the sale on May 26, 1999, for reasons unrelated to our analysis. In her motion to have the sale set aside and the lien declared dormant, Karen Sue Moore, who is Debtor's daughter and a Defendant/Appellee here, argued that the lien and underlying judgment were dormant. The district court held that the judgment remained a valid lien on the properties. That order was not appealed.

¶ 4 Creditor asked the bankruptcy court to modify the automatic stay to allow it to pursue foreclosure on the properties, but its request was denied on August 6, 1999. Nevertheless, on June 11, 2001, Creditor filed this foreclosure action against Debtor, Defendant Moore, and others claiming an interest in the property. Debtor responded with a notice of bankruptcy and motion to stay, asserting that the foreclosure violated the bankruptcy stay as to all of the defendants. Debtor also informed the district court that she was filing a motion with the bankruptcy court to hold Creditor in contempt and declare the lien and underlying judgment dormant.

---

1. Creditor's original judgment against Debtor in the District Court of Major County, case no. C–84–93, was delayed when Debtor filed for bankruptcy on the eve of trial (a separate bankruptcy case predating the bankruptcy at issue in the matter before us). The judgment memorialized a settlement agreement in which Debtor admitted that the amount she agreed to pay was based on "fraud and embezzlement."

¶ 5 The bankruptcy court issued an order staying this lawsuit, but declined to rule on the validity of the lien and judgment. In an order dated October 29, 2001, it held Creditor in contempt for willfully violating the bankruptcy stay by filing this lawsuit. The bankruptcy court concluded, however, that Creditor had not violated the stay by filing the execution on April 30, 1998.[2] Finally, on June 21, 2002, the bankruptcy court vacated its order staying this action and annulled the automatic stay retroactively to June 11, 2001, to allow Creditor to pursue this action. The bankruptcy court had already discharged Debtor from any personal liability to Creditor on July 10, 2002.

¶ 6 On July 3, 2003, Creditor filed a motion for summary judgment in this foreclosure action against Debtor, Defendant Moore, and Defendants Mark and Sherry Stewart. On July 11, 2003, Debtor and Defendant Moore responded jointly and filed a "cross-motion" for summary judgment, asserting that Creditor's 1988 judgment was dormant and the lien unenforceable. On July 21, 2003, Defendants Mark and Sherry Stewart, who were not served until May 15, 2003, filed their answer and included a counter-claim to quiet title. They also filed a response and "cross-motion" for summary judgment identical to that filed by Debtor and Defendant Moore.[3] Creditor argued in response that Debtor's bankruptcy prevented its judgment from becoming dormant until some time after the stay was lifted. Creditor also asserted that the district court's May 26, 1999, order declaring Creditor's lien valid was binding on all Defendants.

2. There appears to be a scrivener's error in the bankruptcy court's order. The copy in the record before us is imperfect, but appears to reference an execution on February 12, 1993 or 1998. It clearly addresses, however, the execution that occurred April 30, 1998.

3. Because Debtor, Defendant Moore, and Defendants Mark and Sherry Stewart have made identical arguments, we will address them jointly as "Defendants" unless another identification is required.

4. According to the summary judgment record, other defendants received service of process and were made parties to the lawsuit although they apparently took no part in the proceedings. The district court did not address their status in the

¶ 7 The district court concluded that Creditor's judgment was dormant as a matter of law and that its lien was unenforceable for want of an underlying obligation. It entered summary judgment in Defendants' favor and quieted title "in favor of the current record owners."[4] The Court of Civil Appeals initially affirmed, but determined on rehearing that the federal bankruptcy code gave Creditor 30 days after the bankruptcy stay was lifted to file an action to enforce the lien even if: (1) the lien had otherwise expired; and (2) Creditor was not prevented by the bankruptcy stay from extending the lien. Although we agree with Judge Buettner's well-reasoned opinion, we granted Defendants' joint petition for certiorari to clarify the effect of the legal conclusions reached on an issue of first impression.

## STANDARD OF REVIEW

¶ 8 Although there are numerous disputed and unsubstantiated assertions of fact in the record, those few facts material to the dispositive issue are undisputed, as they should be in a summary judgment. We are, therefore, presented with a pure question of law and apply the de novo standard of review. *Wathor v. Mut. Assurance Adm'rs, Inc.,* 2004 OK 2, ¶ 4, 87 P.3d 559, 561.

## DISCUSSION

¶ 9 Creditor concedes its judgment lien would have lost its efficacy under normal circumstances on February 11, 1998, because it failed to file a certified copy of the notice of renewal of judgment with the county clerk.[5]

lawsuit when it granted summary judgment, raising a question initially as to the finality of that judgment. The decision, however, disposed of all of Creditor's claims, quieted title "in favor of the current record owners," and was a final judgment, giving this Court appellate jurisdiction. *See* 12 O.S.2001 §§ 681, 952, & 953.

5. In 1998, a judgment became unenforceable unless the judgment creditor: (1) filed with the county clerk a certified copy of execution on the judgment issued by the court clerk; (2) filed a notice of renewal of judgment with the court clerk; (3) had the court clerk issue a garnishment summons; or (4) sent a payor of the judgment debtor a certified copy of a notice of income assignment, all within five years of the

See *U.S. Mortgage v. Laubach,* 2003 OK 67, ¶ 17, 73 P.3d 887, 896. Creditor argues, however, that the circumstances were not normal because Debtor's bankruptcy extended the judgment's dormancy period and the efficacy of the lien. In the alternative, Creditor asserts that the 1999 district court order declaring that Creditor's judgment remained a valid lien precludes all Defendants from relitigating the lien's validity in this action. Although we conclude that Creditor could have renewed its judgment and extended the judgment lien despite Debtor's bankruptcy, we also conclude that the bankruptcy nevertheless extended the dormancy period. As a result, Creditor had at least 30 days after the bankruptcy stay was lifted to file its action to foreclose.

## THE AUTOMATIC STAY CREATED BY DEBTOR'S BANKRUPTCY DID NOT PREVENT CREDITOR FROM RENEWING ITS JUDGMENT BY FILING A NOTICE OF RENEWAL OF JUDGMENT.

■ ¶ 10 The United States Bankruptcy Code creates an automatic stay upon the filing of a bankruptcy petition of "any act to create, perfect, or enforce any lien against property of the estate" or "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a). The Court of Civil Appeals concluded that the stay did not prevent Creditor from renewing its judgment and extending its judgment lien. We agree.

¶ 11 Cases addressing this issue differ widely, but the most relevant factor is the amount of judicial involvement required by the state's judgment renewal procedures. When there is little judicial involvement and the renewal simply maintains the status quo, a majority of courts have concluded the stay does not prevent renewal. *See Larson v.*

*Norwest Bank Fargo, N.A. (In re Larson),* 979 F.2d 625 (8th Cir.1992); *Morton v. Nat'l Bank of N.Y.C. (In re Morton),* 866 F.2d 561, 563–65 (2d Cir.1989); *Wussler v. Silva (In re Silva),* 215 B.R. 73 (Bankr.D.Idaho 1997); *Guertler v. Barlow Woods, Inc.,* 230 Ill. App.3d 933, 172 Ill.Dec. 745, 596 N.E.2d 24 (1992); *W.D. Curran & Assocs. v. Cheng–Shum Enters.,* 107 Md.App. 373, 667 A.2d 1013 (1995); *Victoria Grain Co. of Minneapolis v. Janesville Elevator Constr., Inc. (In re Victoria Grain Co.),* 45 B.R. 2 (Bankr. D.Minn.1984) (filing of mechanics lien statement did not violate automatic stay, but foreclosure proceedings did); *O'Lane v. Spinney,* 110 Nev. 496, 874 P.2d 754 (1994).

■ ¶ 12 Only when a statute requires an act in the nature of enforcing or perfecting a lien or requires the exercise of judicial discretion is renewal likely to be barred by the stay. For example, the renewal of a judgment in California was not a simple ministerial act because the debtor could challenge service, move to quash, or otherwise challenge renewal in ways requiring the exercise of judicial discretion. *Kertesz v. Ostrovsky,* 115 Cal.App.4th 369, 8 Cal.Rptr.3d 907, 913–14 (2004) (did not address whether an alternative "application for renewal" was stayed). In Kansas, renewal of a judgment lien was stayed during bankruptcy because the statute provided that the dormancy period did not run during any period when enforcement was stayed. *St. Joseph Dev. Corp. v. Sequenzia,* 25 Kan.App.2d 514, 968 P.2d 682, 684–85 (1998). Similarly, where preservation of a mechanic's lien required an enforcement action, renewal was stayed during bankruptcy. *Miner Corp. v. Hunters Run Ltd. P'ship (In re Hunters Run Ltd. P'ship),* 875 F.2d 1425 (9th Cir.1989). Finally, where the renewal statute required the creditor to issue a writ of scire facias requiring a response from the debtor, renewal was stayed during bank-

---

judgment or any previous extension. 12 O.S. Supp.1998 § 735 (amended in 2000 and 2002). A judgment lien was extended only by filing a certified copy with the county clerk of: (1) a general execution on the judgment; (2) a notice of renewal of judgment; or (3) a garnishment summons issued against the judgment debtor.

12 O.S. Supp.1998 § 759 (amended in 2000). We need not determine whether Creditor's 1998 "Notice of Renewal of Judgment" substantially complied with section 735 to prevent the *judgment's* dormancy. *See generally U.S. Mortgage v. Laubach,* 2003 OK 67, ¶¶ 14–19, 73 P.3d 887, 895–97.

ruptcy.[6] *Wolfe v. Thomasson (In re Thomasson),* 66 B.R. 503 (Bankr.W.D.Mo.1986).

¶ 13 Under ordinary circumstances, Creditor had four options to renew its judgment in 1998:(1) execution; (2) notice of renewal; (3) garnishment; or (4) income assignment. 12 O.S. Supp.1998 § 735. It could then have extended the judgment lien by filing a certified copy of the execution, notice of renewal, or garnishment with the county clerk. 12 O.S. Supp.1998 § 759 (amended in 2000). We have previously held that all judicial proceedings during the automatic stay are ineffective if the bankruptcy debtor was the original defendant. *Bailey v. Campbell,* 1991 OK 67, 862 P.2d 461. In addition, the Court of Civil Appeals has held that the post-bankruptcy-petition enforcement of a garnishment summons served pre-petition is barred by the automatic stay. *DPW Emps. Credit Union v. Tinker Fed. Credit Union,* 1996 OK CIV APP 106, 925 P.2d 93. All of Creditor's options, therefore, except for filing a notice of renewal, were barred by the automatic stay. However, the simple filing of a notice of renewal is not a judicial proceeding and does nothing more than maintain the status quo. We conclude—as did the bankruptcy court—that the automatic stay did not prevent Creditor from filing the notice of renewal. That determination, however, does not complete our analysis.

### ALTHOUGH CREDITOR COULD HAVE RENEWED ITS JUDGMENT, THE BANKRUPTCY CODE GAVE CREDITOR AT LEAST 30 DAYS AFTER THE AUTOMATIC STAY WAS LIFTED TO FILE THIS ENFORCEMENT ACTION.

¶ 14 In addition to the automatic stay, the bankruptcy code extends limitations periods on some claims against the debtor. 11 U.S.C. § 108(c). Specifically:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a

claim against the debtor ... then such period does not expire until the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

> (2) 30 days after notice of the termination or expiration of the stay....

Clearly, if the automatic stay had prevented Creditor from extending its judgment and judgment lien, section 108(c) would have extended the period in which it could do so until at least 30 days after the stay was lifted. *Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re APC Constr., Inc.),* 112 B.R. 89 (Bankr.D.Vt.1990); *De-Baillon v. Wilson (In re Jack/Wade Drilling, Inc.),* 213 B.R. 493, 498–99 (Bankr.W.D.La.1997); *Concrete Structures, Inc. v. Tidewater Crane & Rigging Co. (In re Concrete Structures, Inc.),* 261 B.R. 627, 642 (E.D.Va.2001); *see also Don Huddleston Constr. Co. v. United Bank & Trust Co. of Norman, Okla.,* 1996 OK CIV APP 133, ¶ 9, 933 P.2d 944, 947 (quoting *Johnson v. Johnson,* 1938 OK 194, ¶ 0, 77 P.2d 745, 745 (syl. no. 2 by the Court)) (When "a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right."); *Statewide Funding Corp. v. Reed,* 1996 OK CIV APP 110, ¶¶ 7–8, 925 P.2d 578, 581.

¶ 15 The more complicated issue, however, is whether section 108(c) extended the period for Creditor to enforce its judgment lien even though it was not prevented from renewing its judgment. Because Congress has "generally left the determination of property rights in the assets of a bankrupt's estate to state law, ... state laws should be suspended only to the extent of actual conflict" with the bankruptcy code. *Butner v. United States,* 440 U.S. 48, 54 & n. 9, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Nonetheless, the United States Supreme Court has recognized that the bankruptcy code's extension provision can help a lienholder whose

---

6. Scire facias is a "writ requiring the person against whom it is issued to appear and show cause why ... a dormant judgment against that person should not be revived." *Black's Law Dictionary* 1347 (7th ed.1999).

right to take possession of property is "frustrated" by the bankruptcy and has left local judges to determine whether such "frustration" has actually occurred. *Id.* at 57, 99 S.Ct. 914.

¶ 16 The Second Circuit has held that section 108(c) renders the "automatic stay" discussion unnecessary because it "tolls the expiration of periods governing the life of statutory liens," regardless of whether enforcement or extension is stayed. *In re Morton,* 866 F.2d at 566. Similarly, the Ninth Circuit has concluded that section 108(c) applies regardless of whether the automatic stay would have prevented the lien renewal. *Spirtos v. Moreno (In re Spirtos),* 221 F.3d 1079, 1081 (9th Cir.2000) ("It is the creditor's inability to enforce the judgment for a portion of the [dormancy] period that keeps the period of duration open under section 108(c).") *enforced by, among others, Moreno v. Spirtos,* No. B169547, 2004 WL 1682358 (Cal.Ct.App. July 28, 2004); *see also Smith v. Lachter (In re Smith),* 293 B.R. 220, 223 (B.A.P. 9th Cir. 2003); *Lachter v. Smith (In re Smith),* 209 Ariz.343, 101 P.3d 637 (2004).

¶ 17 In applying a Georgia statute similar to Oklahoma's, one bankruptcy court observed:

> [E]xistence of a valid judgment lien creates a right to enforce that judgment, whereas the lapse of that lien deprives the creditor of the right to enforce the judgment. Any act taken to renew the judgment, a pre-requisite to enforcement, constitutes a continuation of the civil action against the debtor or the debtor's property to which a nonbankruptcy statutory time limitation applies.

*Wessinger v. Raab (In re Greenberg),* 288 B.R. 612, 615 (Bankr.S.D.Ga.2002) (holding that section 108(c) extended the time for renewing a judgment); *see also Guertler,* 230 Ill.App.3d 933, 172 Ill.Dec. 745, 596 N.E.2d 24; *but see Durkan Patterned Carpet, Inc. v. Premier Hotel Dev. Group (In re Premier Hotel Dev. Group),* 270 B.R. 234 (Bankr. E.D.Tenn.2001) (if automatic stay does not prevent filing or perfection of lien, section 108(c) does not extend time); *In re Jack/Wade Drilling,* 213 B.R. at 498–99 (where

automatic stay did not prevent filing notice of lien, section 108(c) did not extend time).

¶ 18 Here, Creditor's enforcement of its lien was certainly "frustrated" by Debtor's bankruptcy. *In re Smith,* 101 P.3d at 639–640; *Butner,* 440 U.S. at 57, 99 S.Ct. 914. Although Defendants argue that Creditor could have foreclosed on the properties at any time because they were not part of the bankruptcy estate, Debtor and Defendant Moore successfully argued in both state and federal courts that Creditor could not do so while the bankruptcy was pending. *But see Hans Nef v. Ag Servs. of Am., Inc.,* 79 Ark.App. 100, 86 S.W.3d 4, 9–10 (2002) (automatic stay and extension do not apply to property not in the bankruptcy estate). Although Creditor might have been able to bring an earlier independent action against Defendant Moore and Defendants Mark and Sherry Stewart and the other current property owners, Creditor tried unsuccessfully to obtain the bankruptcy court's permission to proceed against the properties. In addition, those property owners would have been entitled to use any defenses available to Debtor to discredit Creditor's lien since a judgment lien ceases to exist when the underlying judgment is no longer enforceable. *U.S. Mortgage,* 2003 OK 67, ¶ 18, 73 P.3d at 896–97. Moreover, we have previously held that, where judicial proceedings were initially prosecuted against the bankruptcy debtor, any subsequent collection or enforcement proceedings during the period of the automatic stay are ineffective. *Bailey,* 1991 OK 67, 862 P.2d 461 (post-bankruptcy-petition collection proceedings against insurer ineffective). Although the facts presented in *Bailey* differed markedly from those presented here, our analysis leads us to conclude that the fact that the properties here were not part of the bankruptcy estate is not determinative in this situation—particularly where at least some of the transfers were not arms-length sales to disinterested third parties.

¶ 19 The legal result we reach today coincides with the equitable result. *See O'Lane,* 874 P.2d at 757. At a minimum, the status of the law governing this area was unsettled throughout the time when Defen-

dants argue that Creditor should have been enforcing the lien. While some of Creditor's actions could have been more artful, it never stopped trying to assert its lien, at least some of the current property owners were always on notice of the lien, and Creditor's efforts were stymied at every turn by Debtor's assertion of the bankruptcy stay. Defendants' opposite assertion now—that the bankruptcy stay did not preclude Creditor's enforcement efforts—cannot be permitted to destroy the rights Creditor consistently asserted. Further, while Defendants Mark and Sherry Stewart have argued that they would have had no knowledge of the possible extension of the lien based on a title examination when they received their property in 1989, they failed to support that argument with any evidentiary material and Creditor presented evidentiary materials tending to support its argument that most, if not all, of the transfers of the properties have been among related parties and made specifically for the purpose of avoiding the lien.[7]

¶ 20 We need not decide whether the period during which Creditor could enforce its lien was extended by only 30 days or whether it was tolled during the entire time Debtor was in bankruptcy. Creditor's execution was timely under either interpretation as it clearly had filed this action before the expiration of 30 days after it received "notice of the termination or expiration of the stay."[8]

## CONCLUSION

¶ 21 Under ordinary circumstances, Creditor's judicial lien would have lapsed on February 11, 1998, because Creditor failed to file a certified copy of the notice of renewal of judgment with the county clerk. 12 O.S. Supp.1998 §§ 735, 759. Although Creditor was not prohibited from renewing its judgment and extending its lien by the automatic stay triggered by Debtor's bankruptcy, the bankruptcy code extended the time in which Creditor could execute on the judgment and judgment lien for at least 30 days after the automatic stay was lifted. 11 U.S.C. §§ 108(c) & 362(a). The district court, therefore, erred in determining that Creditor's judgment was dormant as a matter of law.

¶ 22 On remand, the district court will have to resolve numerous issues of fact. While the parties have agreed that none of the properties subject to the lien were legally owned by Debtor at the time she filed bankruptcy and were never part of the bankruptcy estate, there is at least one deed purporting to transfer property back to Debtor and Creditor has introduced evidentiary material tending to support its argument that some or all of the transfers were not arms-length or for value. We take no position on whether bona-fide subsequent purchasers should still be able to avoid the lien or whether Creditor's assertions, if established, would change the result. Those determinations must first be made by the district court after the parties have had an opportunity to present their proof and make legal arguments. All we hold today is that Creditor was not barred as a matter of law from attempting to enforce its lien until at least 30 days after it received notice that the bankruptcy stay had been lifted.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; AND MATTER REMANDED FOR FURTHER PROCEEDINGS.**

ALL JUSTICES CONCUR.

---

7. For example, it appears that all of the properties originated with the "Stewart family." Whether that family is related to Defendants Mark and Sherry Stewart is not clear, but the assumption that there is a relationship would not be baseless considering the nature of the other deeds in the record on appeal. Obviously, however, the nature of the transfers is a determination for the district court on remand.

8. Although the bankruptcy court annulled the stay retroactively to June 11, *2001*, its order doing so was not filed until June 21, *2002*. Creditor, therefore, could not have received notice that the stay had terminated or expired until some time after June 21, 2002. It filed this action on June 11, 2001, and apparently filed a notice of renewal in the county records (according to Defendants' briefs) on July 22, *2001*. Both events, therefore, occurred before the expiration of 30 days after June 21, *2002*.